468 So.2d 896 (1984)
Joseph Clyde HENRY
v.
STATE.
5 Div. 865.
Court of Criminal Appeals of Alabama.
July 31, 1984.
On Return to Remand December 11, 1984.
Rehearing Denied January 22, 1985.
*897 J. Michael Williams, Sr., Auburn, for appellant.
Charles A. Graddick, Atty. Gen., and Helen P. Nelson, Asst. Atty. Gen., for appellee.
BOWEN, Presiding Judge.
Joseph Clyde Henry was convicted of burglary in the first degree, sentenced to fifteen years' imprisonment, and ordered to make restitution in the amount of $2,356.00. He presents three issues on appeal.

I
The defendant's major contention is that the statement he gave to the Auburn police should not have been admitted into evidence because he did not possess the mental ability to make a knowing and intelligent waiver of his Miranda rights.
At the suppression hearing, Detective Duff Quenelle, the officer who took Henry's statement, testified that he had neither threatened nor offered the defendant any promise or inducement to talk. In Quenelle's opinion, the defendant was alert, coherent and sober when questioned. The detective advised Henry of his constitutional rights, read him a waiver of rights form, and allowed him to read the form himself. Quenelle testified that the defendant said he could read and write, appeared to read the form, and stated that he understood his rights. Henry then signed the waiver and made an oral statement which the officer reduced to writing. Quenelle read the defendant's statement back to him, whereupon Henry acknowledged and signed the statement.
*898 Dr. Glenn D. King, a clinical psychologist hired by the defense with court-approved State funds, testified that he evaluated the defendant's intellectual ability following his arrest. The testing disclosed that Henry had an I.Q. of 66, was in the "moderate range of mental retardation", and functioned at or slightly below third grade level in basic reading and spelling skills.
Dr. King stated in his opinion that Henry was unable to read or comprehend the waiver of rights form as read to him and "there is no way that he could have understood what those rights were." When asked by the court, "Do you think that he could understand that he had the right to remain silent?" Dr. King replied, "I don't think that he would understand what that meant." Dr. King also testified that the defendant probably did indicate that he understood his constitutional rights.
"[I]n Mr. Henry's case ... if asked if he understood something ... he probably would say `Yes'even when he didn't... [P]eople who function at this intellectual level will give that kind of a statement when asked if they understand something. Typically, they will nod their head and say, `Yes'."
The psychologist concluded that, due to the consistency of Henry's test results, the defendant was not "faking" responses.
The defendant testified that he had completed the ninth grade in special education and could read and write "a little". He stated that he did not remember being told that he had the right to a lawyer, signing the waiver, or giving a statement to Officer Quenelle. When the assistant district attorney asked him on cross examination whether he understood the oath given him by the trial judge before his testimony, Henry said, "No sir. Only thing I know is he told me to raise my hand up ... raise my hand something like for rights."
At the conclusion of the suppression hearing the trial judge ruled Henry's statement admissible. After the State's case, the defense presented no witnesses other than Dr. King, who presented to the jury substantially the same testimony he had given during the suppression hearing. After the defense rested, the State called Officer Quenelle in rebuttal. Quenelle testified that, four days after the defendant made the statement at issue here, the officer talked with Henry again on "another matter." At that time, Quenelle advised the defendant of his constitutional rights and asked him if he wished to waive those rights. Henry told Quenelle that he did not want to waive his rights and that he wanted a lawyer.
On cross examination, defense counsel elicited from Officer Quenelle the fact that during the four-day interim after Henry's statement the defendant had been confined in the Auburn jail in a cell with three other inmates. In his closing statement, the attorney argued to the jury that the defendant's association with other prisoners had made him "street-wise", had led him to refuse to waive his rights, and instead, to insist upon talking to a lawyer before being questioned.
If we examine only the evidence before the trial judge at the time he ruled on the motion to suppress Henry's statement, we would be inclined to hold that the evidence of a knowing and intelligent waiver of constitutional rights was insufficient. Cf. Eddings v. State, 443 So.2d 1308 (Ala.Cr.App. 1983) (trainable mentally retarded defendant with I.Q. of 49 who was highly suggestible held not to have waived his rights); Hines v. State, 384 So.2d 1171 (Ala.Cr. App.), cert. denied, 384 So.2d 1184 (Ala. 1980) (statement of highly suggestible retarded defendant having I.Q. of 39 excluded).
In both Eddings and Hines, there was testimony that not only were the defendants mentally deficient and unable to comprehend the meaning of the words used in the waiver form, but they were likely to have answered that they did understand their rights in order to please the questioner. We have the same evidence regarding the defendant Henry. Nevertheless, the distinction between those cases and the present case lies in the fact that here other evidence, introduced by the State following *899 the hearing on motion to suppress, supplied an inference that Henry did comprehend the rights he had been asked to waive. The State's rebuttal evidence established that, four days after the defendant agreed to waive his rights on this charge, he chose not to relinquish his rights on another matter and, instead, requested an attorney.
If the foregoing testimony is considered, then it is enough to tip the scales in favor of the admissibility of Henry's statement and uphold the trial court's ruling. Yet, normally, a reviewing court determines the correctness of a trial court's ruling "as of the time when it was made and according to what the record shows was before the lower court at that time." 24A C.J.S. Criminal Law § 1836 at 555-56 (1962). See German v. State, 429 So.2d 1138 (Ala.Cr.App.1983) (sufficiency of State's evidence tested as of time defense motion to exclude was made).
There are exceptions to this rule of review, however, see 24A C.J.S. Criminal Law § 1836, supra, particularly when the ruling is on a preliminary question or pretrial determination of the admissibility of evidence. See, e.g., Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925) (preliminary ruling on legality of vehicle search and seizure of contraband); State v. Randall, 94 Ariz. 417, 385 P.2d 709 (1963) (pretrial motion to suppress seized evidence); State v. Huffman, 181 Neb. 356, 148 N.W.2d 321 (1967) (motion to suppress fruits of search). In Carroll, the United States Supreme Court, rejecting the argument that it was limited to a review of the same evidence before the trial court at the time of ruling on the motion to suppress, stated the following:
"Counsel finally argue that the defendants should be permitted to escape the effect of the conviction because the court refused on motion to deliver them the liquor when, as they say, the evidence adduced on the motion was much less than that shown on the trial, and did not show probable cause. The record does not make it clear what evidence was produced in support of or against the motion. But, apart from this, we think the point is without substance here. If the evidence given on the trial was sufficient, as we think it was, to sustain the introduction of the liquor as evidence, it is immaterial that there was an inadequacy of evidence when application was made for its return. A conviction on adequate and admissible evidence should not be set aside on such a ground. The whole matter was gone into at the trial, so no right of the defendant's was infringed." 267 U.S. at 162, 45 S.Ct. at 288 (emphasis added).
Similarly, the Arizona and Nebraska Supreme Courts have looked to the whole record in order to determine the correctness of a pretrial ruling on motion to suppress seized evidence. See State v. Randall, supra; State v. Huffman, supra. Although our courts have not passed on this issue in the context of a motion to suppress a confession, we have stated that "[w]e apply the same rules in reviewing a trial judge's determination of the voluntariness of a consent to search as we do in reviewing his determination of the voluntariness of a confession." Weatherford v. State, 369 So.2d 863, 873 (Ala.Cr.App.), cert. denied, 369 So.2d 873 (Ala.1979). Thus, following the scope of review used in Carroll and applying it to a motion to suppress a defendant's statement, we are not limited merely to that evidence presented at the suppression hearing, but may also consider the testimony given before the jury. Reviewing the evidence from this standpoint, we find that the later testimony provided an inference that the defendant's waiver on the occasion in question was knowingly and intelligently made and was sufficient to uphold the admissibility of the confession.
Although defense counsel's closing argument to the jury implied that Henry's four-day jail confinement had exposed him to other inmates who advised him not to waive his rights or give the police a statement, there was no evidence to that effect. Statements of counsel are not evidence, see Whitt v. State, 370 So.2d 736, 739 (Ala. 1979). An equally plausible inference is *900 that, aware of his rights on both occasions, Henry willingly chose to cooperate and confess to one crime but not to another.
The testimony of Dr. King, the psychologist, was not binding on the trial court, cf. Christian v. State, 351 So.2d 623, 624 (Ala.1977) (expert psychiatric testimony regarding insanity). The trial judge had the benefit of observing Henry's demeanor, comprehension, and manner of answering questions on the stand. These factors, combined with the State's rebuttal evidence, support a determination that Henry waived his rights on the occasion in question.

II
Henry also argues that the trial court should have granted his motion for mistrial following an alleged comment by the prosecutor on the defendant's failure to testify. This contention is based on the following, which occurred during the prosecutor's closing argument:
"Tommy Turk came up here and told you the truth. Officer Duff Quenelle, a long-time member of the Auburn Police Department Detective Division, came up here and told you the truth. The defendant told the truth; it is not contradicted whatsoever, not rebutted whatsoever. It is basically agreed, the same statement
"MR. WILLIAMS [Defense Counsel]: We object to that. Can we approach the bench?
"THE COURT: Sure.
"(Thereupon, the following proceedings were had in the presence of but out of the hearing of the jury:)
"MR. WILLIAMS: We moved for a mistrial, based on the arguments of the State and the fact that the State has commented on the fact that the defendant did not testify.
"MR. WILKES [Assistant District Attorney]: I didn't comment. That was his statement.
"MR. WILLIAMS: Judge, he said the defendant had no one rebutted the things in the statement.
"MR. WILKES: I didn't say `they didn't' rebut; I said, `no one.'
"THE COURT: Well, I deny your motion for a mistrial, but you're getting mighty close, Kenny. Stay away from that.
"MR. WILKES: Well, we would ask the Court if the Court feels like I have gotten close, to maybe ask the jury to
"THE COURT: I don't know. If I talk to the jury about it, I will probably further compound the problem.
"MR. WILLIAMS: Yes, sir, I agree with that but we would still move for a mistrial.
"THE COURT: That's denied.
"Now, go ahead."
As we observed in Jackson v. State, 414 So.2d 1014 (Ala.Cr.App.1982):
"[T]here appears to be some conflict as to what test should govern prosecutional comments directed either directly or indirectly at the defendant's failure to testify, Cf. Ex parte Yarber, 375 So.2d 1231 (Ala.1979) with Beecher v. State, 294 Ala. 674, 320 So.2d 727 (1975) (where Yarber utilizes the virtual identification doctrine while Beecher had earlier disapproved of such in favor of a standard based upon `the possibility that a prosecutor's comment could be understood by the jury as referenced to failure of defendant to testify....')." 414 So.2d at 1022.
See also Ex parte Tucker, 454 So.2d 552 (Ala.1984); Ex parte Dobard, 435 So.2d 1351 (Ala.1983).
In the present case, the comment was, at most, an indirect reference to the defendant's failure to take the stand, cf. Ex parte Tucker, supra, and its prejudicial nature could, therefore, have been eradicated by the prompt action of the trial judge, see Nix v. State, 370 So.2d 1115 (Ala.Cr. App.), cert. denied, 370 So.2d 1119 (Ala. 1979). "Where the trial court immediately charges the jury to disregard the prosecutor's improper remarks, there is a prima facie presumption against error." Nix v. State, 370 So.2d at 1117.
"The trial court can cure such a prejudicial statement, so that any error is *901 harmless, by appropriate instructions to the jury which include `that such remarks are improper and to disregard them; that statements of counsel are not evidence; that under the law the defendant has the privilege to testify in his own behalf or not; that he cannot be compelled to testify against himself; and that no presumption of guilt or inference of any kind should be drawn from his failure to testify.'" Coble v. City of Birmingham, 389 So.2d 527, 535 (Ala.Cr. App.), cert. denied, 389 So.2d 535 (Ala. 1980) (quoting Whitt v. State, 370 So.2d 736, 739 (Ala.1979)).
See also Meade v. State, 381 So.2d 656 (Ala.Cr.App.), cert. denied, 381 So.2d 659 (Ala.1980).
In the case before us, defense counsel acquiesced in the trial court's decision not to caution the jury and, thus, he cannot seek to predicate error on the denial of his motion for a mistrial. "A motion for mistrial should not be granted where the prejudicial qualities of the comment can be eradicated by action of the trial court." Nix v. State, 370 So.2d at 1117.

III
Finally, Henry contends that the amount of restitution ordered was unsubstantiated. At trial, the victim testified that the value of the stolen property was "just a little under $3000". At sentencing, the Auburn police presented the court with a "Restitution Form" on which it itemized the victim's losses and valued them at $2356. When the trial judge declared that he proposed to accept the amount as stated on the "Restitution Form", defense counsel objected and requested "receipts and evaluations of each piece of property." Cf. Clare v. State, 456 So.2d 355 (Ala.Cr.App. 1983) (objection to amount of restitution not preserved for review). The court overruled the objection and ordered restitution in the amount of $2356.
We agree with the defendant that he was entitled to a hearing, at which legal evidence was introduced, in order to determine the precise amount of restitution due the victim in this case. Sections 15-18-67 and -69, Code of Alabama 1975, provide the following:
"When a defendant is convicted of a criminal activity or conduct which has resulted in pecuniary damages or loss to a victim, the court shall hold a hearing to determine the amount or type of restitution due the victim or victims of such defendant's criminal acts. Such restitution hearings shall be held as a matter of course and in addition to any other sentence which it may impose, the court shall order that the defendant make restitution or otherwise compensate such victim for any pecuniary damages. The defendant, the victim or victims, or their representatives or the administrator of any victim's estate as well as the district attorney shall have the right to be present and be heard upon the issue of restitution at any such hearings.
"At such restitution hearings, the defendant, the victim, the district attorney, or other interested party may object to the imposition, amount or distribution of restitution or the manner or method thereof and the court shall allow all such objections to be heard and preserved as a matter of record. The court shall thereafter enter its order upon the record stating its findings and the underlying facts and circumstances thereof." (Emphasis added).
In addition, Rule 10(a)(5), Ala.R.Crim.P. Temp., provides that the amount of restitution due the victim "shall be determined by the court from evidence presented at the sentence hearing if not stipulated by the parties."
We entertain no doubt as to the integrity of the Auburn Police Department's valuation of the stolen property; however, the "Restitution Form" as presented to the court was not legal evidence without accompanying testimony regarding the manner in which the values were determined. Thus, we must remand this cause to the trial court with instructions to conduct a hearing for the purpose of determining restitution *902 in accord with §§ 15-18-65 et seq. of the Code of Alabama 1975, and Rule 10, Ala.R.Crim.P.Temp. Although the victim need not produce the actual sales receipts for the property stolen, there should be some evidence as to how the value was determined.
The cause is remanded with instructions to hold a hearing on the amount of restitution.
REMANDED WITH INSTRUCTIONS.
All Judges concur.

ON RETURN TO REMAND
BOWEN, Presiding Judge.
On remand, the circuit court held a hearing to determine the amount of restitution and issued a written order. The substance of that order is as follows: "The Court heard evidence ore tenus to include testimony of the victim. Upon hearing the evidence in this case the Court is of the opinion that the State has established restitution due in the amount of $2,356.00."
This constitutes sufficient compliance with Alabama Code 1975, § 15-18-65, et seq. and Rule 10, Ala.R.Crim.P.Temp. The judgment of the circuit court is affirmed.
OPINION EXTENDED;
AFFIRMED.
All Judges concur.