McMILLAN, Judge.
The appellant, J.E., was found guilty of first-degree rape, two counts of second-degree rape, incest, and first-degree theft of property.[2] The trial court sentenced him, as a habitual offender, to life imprisonment without parole for the first-degree-rape conviction, life imprisonment for each of the seeond-degree-rape convictions and for the incest conviction, and 50 years’ imprisonment for the theft conviction. The court ordered the sentences for the first-degree- and second-degree-rape convictions involving victim D.L. to run concurrently.
The State’s evidence tended to show the following. On July 12, 2004, J.E., who was 33 years old, took his 14-year-old daughter, A.E., and her 14-year-old Mend, D.L., to a coworker’s house. While there J.E. gave D.L. alcohol and Xanax, and she was not able to remember what occurred thereafter. The following day, J.E.’s daughter told D.L. that she had passed out and that J.E. had engaged in sex with her. A physical examination revealed signs consistent with sexual assault, and DNA testing revealed that the chance of someone other than J.E. contributing the DNA in *337 the semen on D.L.’s vaginal swab was one in two point five billion. A.E. subsequently told sheriffs investigator Lyndon McWhorter that she thought that her father had had sex with D.L. while her father’s coworker was having sex with A.E. She said that she and her father had been having sex since 2003, that he sometimes took her to the coworker’s house for her to have sex with the coworker and him, and that she gave her father the money the coworker gave to her after they had had sex.
At trial, the daughter testified that her previous statements were false and that she had made them up because her father’s coworker threatened to harm her and her family if she did not implicate her father. D.L. testified that the first time she met J.E., which was during the summer of 2004, she saw him smoke crack cocaine and have sex with his daughter. The coworker testified that on July 12, 2004, he had sex with J.E.’s daughter while J.E. had sex with D.L. The coworker also said that a few days later, J.E. told him that he had taken a truck from their employer, Joel Sutton, and would return it when Sutton paid him the money that he was owed. Sutton testified that he had fired J.E. and his coworker when criminal charges were filed against them and that his truck was missing the morning after he fired them.
I.
J.E. contends that the trial court erred in denying his first motion for a mistrial because, he says, the prosecutor commented on J.E.’s availability to testify in his own behalf. He also contends that the court’s instructions to the jury were inadequate to cure the error because they included only a general admonition to disregard the comments and objections of the attorneys.
After J.E. was apprehended, he apparently gave an exculpatory statement to Investigator McWhorter. The State called McWhorter as a witness but did not question him about the statement. During defense counsel’s cross-examination of McWhorter the following occurred:
“Q. [Mr. Terry, defense counsel]: At some point did you take a statement from J.E.?
“A. Yes, I did.
“Q. Okay. And did you ask J.E. if he had had sex with his daughter ... ?
“MR. LANG [prosecutor]: Judge, we’re going to object to any statements the defendant made. It would be hearsay.
“MR. TERRY [defense counsel]: Your Honor, it’s an exception to the hearsay rule.
“MR. OSBORN [prosecutor]: No, sir, it’s not.
“THE COURT: Approach, please. “(WHEREUPON, A BENCH CONFERENCE WAS HAD, DURING WHICH THE FOLLOWING PROCEEDINGS WERE HAD AND DONE OUTSIDE THE HEARING OF THE JURY.)
“MR. LANG: Your Honor, it’s an out-of-court statement and it is clearly hearsay. And it does not follow any exception of a statement against interest. It’s a self-serving statement, and clearly it’s — the only exception that applies when it’s the defendant’s statement is when it’s offered by the State. It does not apply to the defendant offer [sic] his own testimony.
“MR. OSBORN: He has an opportunity to testify if he chooses to do so.
“THE COURT: I’ll sustain the objection.
“(WHEREUPON, THE BENCH CONFERENCE WAS CONCLUDED, AF *338 TER WHICH THE FOLLOWING PROCEEDINGS WERE HAD AND DONE IN THE HEARING OF THE JURY.)
“THE COURT: I sustain the objection.
“(MR. TERRY CONTINUED)
“Q. You did say you took a statement from him?
“A. Yes, sir.
“Q. And that’s not being offered today?
“MR. OSBORN: Well, Judge, we’re going to object. He’s trying to make a point of that. The defendant can testify and he knows that if he chooses to do so. It’s hearsay.
“MR. TERRY: Your Honor, I’m going to object and ask for a mistrial as to that last statement.
“THE COURT: Approach the bench, please.
“(WHEREUPON, A BENCH CONFERENCE WAS HAD, DURING WHICH THE FOLLOWING PROCEEDINGS WERE HAD AND DONE OUTSIDE THE HEARING OF THE JURY.)
“MR. TERRY: That’s clearly a comment in the presence of the jury on whether or not the defendant will testify. He’s already told the jury that he can testify. That’s clearly a statement in the presence of the jury commenting on whether the defendant testified or not, clearly improper, clearly grounds for a mistrial.
“MR. OSBORN: Judge, applying to what Mr. Terry said.
“THE COURT: Gentlemen, you want to help me keep the car out of the ditch. You want to be able to try this case to conclusion?
“MR. OSBORN: Yes, sir.
“MR. TERRY: Yes, sir.
“THE COURT: All right, you know the rules of evidence and what we can do. It was reply-in-kind. As to the effect it has, I don’t know. There is nothing I can do at this point of further comment on that. I’m going to declare at this point, I’m going to deny the request for a mistrial. Let’s move on.
“I agreed — when I sustained the objection by the State before, I think it is along the lines of ... self-serving. I don’t think it’s admissible and further comment on that, the fact that the statement was taken, didn’t reply in kind. I think the record will show that. I don’t think at this point that it’s a prejudicial error that would deny the defendant a right to a fair trial.
“But let’s refrain from other comments on things that you know is [sic] not going to otherwise be admissible, the jury shouldn’t hear.
“MR. OSBORN: Judge, will you instruct the jury to disregard both counsel’s comments?
“THE COURT: That’s about all I can do.”
The trial court instructed the jury not to read anything into its rulings on the parties’ objections and to disregard all of the statements and objections made by the attorneys. Defense counsel then continued his cross-examination.
This court addressed a similar situation in Jackson v. State, 629 So.2d 748 (Ala. Crim.App.1993). After the trial court refused to allow the contents of Jackson’s self-serving statement into evidence, defense counsel referred to the statement in closing argument. The prosecutor then attempted to “reply in kind” during final rebuttal: “ ‘Now, he [defense counsel] kept talking about the defendant’s statement, but the defendant’s statement is hearsay. ... Now, if [the defendant] had want *339 ed to testify that would be fine, but he did not.’ ” 629 So.2d at 753. We held that the prosecutor’s comment on Jackson’s failure to testify could not be justified under the reply-in-kind doctrine because defense counsel had not impermissibly commented on the details of the statement itself. We also held that Jackson was not entitled to a mistrial because the trial court’s curative instruction was sufficient to vitiate the improper comment.
The comment in the present case also is a direct comment on the defendant’s failure to testify, and it cannot be excused as a reply-in-kind because it was made in response to a question that was not improper. See Minor v. State, 914 So.2d 372 (Ala.Crim.App.2004)(reply-in-kind doctrine inapplicable when impermissible comment is in reply to proper argument by opposing party). Where there has been a direct comment on, or direct reference to, a defendant’s failure to testify and the trial court does not act promptly to cure the comment, the defendant’s conviction must be reversed. Ex parte Wilson, 571 So.2d 1251 (Ala.1990).
The Alabama Supreme Court has suggested the following minimum requirements for an effective curative instruction:
“ We suggest that, at a minimum, the trial judge must sustain the objection, and should then promptly and vigorously give appropriate instructions to the jury. Such instructions should include that such remarks are improper and to disregard them; that statements of counsel are not evidence; that under the law the defendant has the privilege to testify in his own behalf or not; that he cannot be compelled to testify against himself; and, that no presumption of guilt or inference of any kind should be drawn from his failure to testify. With appropriate instructions, we hold that the error of the prosecutor’s remarks will be sufficiently vitiated that such error is harmless beyond a reasonable doubt....’
“A curative instruction in a situation of this type, to be of any value, must be given immediately after the harmful statement is made. Further, where there can be any reasonable doubt as to the particular statement in question, the statement should be explicitly identified to the jury so that it can know what must not be considered. Anything less can in no way cure the error.”
Ex parte Wilson, 571 So.2d at 1265 (quoting Whitt v. State, 370 So.2d 736, 739 (Ala.1979)).
The instruction in the present case was immediate, but it was clearly insufficient to satisfy the requirements set out in Ex parte Wilson. Under other circumstances, we would have no choice but to reverse the judgment of the trial court. However, under the particular facts of this ease, J.E. is not entitled to a new trial. See Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), overruled in part on other grounds, Brecht v. Abrahamson, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353. (1993)(rejecting the position that any prosecutorial comment on the defendant’s failure to testify per se requires reversal). See also Thomas v. State, 824 So.2d 1, 29-31 (Ala.Crim.App. 1999), overruled on other grounds, Ex parte Carter, 889 So.2d 528 (Ala.2004).
In Henry v. State, 468 So.2d 896, 900 (Ala.Crim.App.1984), the prosecutor allegedly referred in closing argument to Henry’s failure to take the stand. Defense counsel objected and requested a bench conference, during which the following occurred:
“MR. WILLIAMS [defense counsel]: We moved [sic] for a mistrial, based on the arguments of the State and the fact *340 that the State has commented on the fact that the defendant did not testify.
“MR. WILKES [assistant district attorney]: I didn’t comment. That was his statement.
“MR. WILLIAMS: Judge, he said the defendant had no one rebutted [sic] the things in the statement.
“MR. WILKES: I didn’t say ‘they didn’t’ rebut; I said, ‘no one.’
“THE COURT: Well, I deny your motion for a mistrial, but you’re getting mighty close, Kenny. Stay away from that.
“MR. WILKES: Well, we would ask the Court if the Court feels like I have gotten close, to maybe ask the jury to—
“THE COURT: I don’t know. If I talk to the jury about it, I will probably further compound the problem.
“MR. WILLIAMS: Yes, sir, I agree with that, but we would still move for a mistrial.
“THE COURT: That’s denied.
“Now, go ahead.”
On appeal, this court affirmed the trial court’s denial of Henry’s motion for a mistrial because we found that defense counsel acquiesced when the court decided not to give a curative instruction:
“In the case before us, defense counsel acquiesced in the trial court’s decision not to caution the jury and, thus, he cannot seek to predicate error on the denial of his motion for a mistrial. ‘A motion for mistrial should not be granted where the prejudicial qualities of the comment can be eradicated by the action of the trial court.’ Nix v. State, 370 So.2d [1115,] 1117 [ (Ala.Crim.App.), cert. denied, 370 So.2d 1119 (Ala. 1979) ].”
Henry v. State, 468 So.2d at 901.[3]
Here, as in Henry, defense counsel acquiesced in an error committed by the court. The trial court apparently did not intend to give a curative instruction (“There is nothing I can do at this point ... I’m going to deny the request for a mistrial”), and J.E. was not required to request one. See Qualls v. State, 371 So.2d 949 (Ala.Crim.App.1979) (when prosecutor comments on defendant’s failure to testify, trial judge has a duty not only to sustain defense counsel’s objections but also to give curative instructions even where not requested); Allen v. State, 659 So.2d 135 (Ala.Crim.App,1994)(defendant’s failure to request instructions as part of motion for mistrial does not constitute waiver of issue of failure to instruct but does weigh against claim of prejudice). However, the prosecutor did request a corrective instruction, and the court immediately complied. The instruction requested by the prosecutor was clearly insufficient, but J.E. did not object to the instruction or request an instruction of his own. The court then stated its belief that the corrective instruction was sufficient (“That’s about all I can do”), and J.E. again failed to object or request a more complete instruction by the court.
We recognize that comments on a defendant’s failure to testify are highly prejudicial and harmful and that courts must carefully guard against violating a defendant’s constitutional right not to testify. Ex parte Williams, 461 So.2d 852 (Ala.1984). However, J.E. cannot predi *341 cate error on the violation in the present case because he acquiesced in the determination that the error was cured and that further correction was not required. See Smith v. State, 745 So.2d 922 (Ala.Crim.App.l999)(party cannot assume inconsistent positions in trial and in the appellate court and generally will not be permitted to allege error in trial court proceedings that was invited by him or that was a natural consequence of his own actions); Thompson v. State, 527 So.2d 777 (Ala.Crim.App.l988)(trial court properly denied motion for mistrial because comment was not a comment on defendant’s failure to testify; moreover, defense counsel refused court’s offer to give curative instructions). Because J.E. acquiesced in the trial court’s decision to give an incomplete curative instruction, he cannot challenge the court’s denial of his motion for a mistrial made on the basis of an improper instruction.
II.
J.E. contends that the trial court erred in denying his second motion for a mistrial because the prosecutor made a reference to J.E.’s having been in prison. He argues that the State’s only purpose in introducing this evidence had to be to show his bad character because evidence of his good character had not been introduced and he did not testify. During his direct examination of Investigator McWhorter, the prosecutor asked what the daughter had said in her statements. Investigator McWhorter responded: “[She] stated her father J.E. got out of prison and moved into the house with her and her grandparents. ...” During his redirect examination of D.L., the prosecutor asked, with regard to why D.L. had not met J.E. before the summer of 2004: “Is that because you knew he had been in prison?” J.E.’s counsel objected and requested a mistrial, on the ground that the prosecutor was “clearly not responding in kind.” The trial court stated that the same information had already been heard by the jury when Investigator McWhorter read the daughter’s statement into evidence, and it denied the motion for a mistrial.
The grant or denial of a mistrial is a matter within the sound discretion of the trial court, and its ruling will be disturbed only if an abuse of that discretion is shown. Brasher v. State, 555 So.2d 184 (Ala.Crim.App.1988). The trial court did not abuse its discretion in overruling J.E.’s second motion for a mistrial because testimony about the same matter had already been introduced into evidence without objection. In McArthur v. State, 591 So.2d 135 (Ala.Crim.App.1991), this court held that the defendant was not entitled to a mistrial based on an allegedly improper question because he had initially permitted the matter at issue to be elicited without objection. Prejudicial error may not be predicated on evidence that has been admitted without objection or motion to exclude at some other stage of trial. Lawrence v. State, 409 So.2d 987 (Ala.Crim. App.1982).
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
SHAW, WISE, and WELCH, JJ., concur. BASCHAB, P.J., concurs in the result.

. J.E. was charged with first-degree rape, second-degree rape, and incest involving his daughter; with first-degree rape and second-degree rape involving D.L.; and with theft of his employer's truck. He was found not guilty of the first-degree rape of his daughter.

. The comment in Henry was "at most, an indirect reference to the defendant's failure to take the stand,” Henry, 468 So.2d at 900; the comment in the present case was a direct comment on J.E.’s failure to testify. However, a direct comment on the defendant’s failure to testify can also be cured by an appropriate instruction from the trial court. Ex parte Hammonds, 777 So.2d 777 (Ala.2000).