SHAW, Judge.
The appellant, K.D.H., was adjudicated delinquent on the underlying charges of rape in the first degree, a violation of § 13A-6-61, Ala.Code 1975, and sodomy in the first degree, a violation of § 13A-6-63, Ala.Code 1975. He was committed to the custody of the Alabama Department of Youth Services.
The appellant presents nine issues on appeal, all of which challenge the juvenile court’s ruling that evidence of out-of-court statements made by the victim, who was three years old at the time of trial and two years old at the time of the offenses, was admissible.
Before the adjudication hearing, the State submitted notice of its intent to introduce evidence of two out-of-court statements made by the victim — one to Selena Bentley, a social worker with the Department of Human Resources and one to her mother, S.B., in the presence of Anita Sellers, an officer with the City of Prichard Police Department — pursuant to the Child Physical and Sexual Abuse Victim Protection Act, §§ 15-25-30 through -40, Ala. Code 1975. The appellant filed a motion to exclude any evidence regarding the victim’s out-of-court statements on the grounds that the statements were inadmis *986 sible hearsay and were not admissible “under any statutory exception” and that “[a]ny admission of the out of court statements would violate [his] 4th, 5th, and 6th amendment rights.” (C. 26.) The juvenile court held a brief hearing on the motions. At the hearing, the State argued that the statutory requirements for allowing such statements into evidence were met in this case as evidenced by a report submitted by Dr. Larry Faison, a child psychologist who had evaluated the victim; the appellant argued that the requirements had not been met. The juvenile court ruled that the statements were admissible. However, after that ruling, the appellant presented several more arguments to the trial court as to why the statements should not be admitted into evidence. After hearing these arguments, the juvenile court stated: “I’m going to have to rule as you come forward with each of the witnesses.” (R. 6.)
The State then presented its evidence against the appellant, which indicated the following. On August 30, 2000, S.B. left the victim alone with the appellant at the appellant’s mother’s house for no more than 30 minutes. When S.B. returned, the victim, who had been asleep on the couch when S.B. left, was standing in the bathroom holding her underwear in her hands and crying. A physical examination the following day revealed injuries to the victim’s vaginal area and anus, which Dr. John F. Shriner, a pediatrician, described as “non-accidental” injuries caused by penetration of the vagina and anus with an object. (R. 17.) The State also presented evidence during its case-in-chief of the out-of-court statements made by the victim. S.B. testified that while at the hospital, the victim told her that “[the appellant] hurt my pee and my butt.” (R. 24.) Officer Sellers testified that, while at the hospital, she heard the victim state that “her tee and her butt hurt and [that the appellant] hurt my butt.” (R. 55.) Finally, Selena Bentley testified that when she interviewed the victim on August 31, 2000, the victim told her that “[the appellant] hurt my pee.” (R. 53.) When she asked the victim what her “pee” was, Bentley said, the victim put her hands between her legs and cupped her vaginal area.
After the State rested its case, the appellant moved for a judgment of acquittal, and the juvenile court then stated:
‘We did have a hearing on the motion to exclude and I denied the motion. What the Court is going to do now is have marked into evidence the psychological evaluation of Dr. Larry Faison as Court’s exhibit. Because the Court considered this to be done. Here is Court’s exhibit one having marked into evidence. The Court psychologist, Dr. Larry Fai-son, testified as to [the victim’s] development and in my opinion, meets the legal requirements showing that she is not available to provide testimony from memory due to the conditions described by the psychologist. The Court does, therefore, deny the motion for a judgment of acquittal.”
(R. 62.)
The appellant then called several witnesses to testify in his defense, including Dr. Faison, who, contrary to the juvenile court’s statement, had not yet testified. Dr. Faison testified that the victim’s communication skills were very limited; that she spoke in very short, abbreviated sentences; that she was unable to identify basic body parts; that she was unable to identify any traumatic event; and that she was immature for her age.
Before addressing the issues presented by the appellant, we quote those portions of the Child Physical and Sexual Abuse Victim Protection Act that are relevant to *987 this case. Section 15-26-31, Ala.Code 1975, provides:
“An out-of-court statement made by a child under 12 years of age at the time of the proceeding concerning an act that is a material element of any crime involving child physical offense, sexual offense, and exploitation, as defined in Section 15-25-39, which statement is not otherwise admissible in evidence, is admissible in evidence in criminal proceedings, if the requirements of Section 15-25-32 are met.”
Section 15-25-32, Ala.Code 1975, provides, in pertinent part:
“An out-of-court statement may be admitted as provided in Section 15-25-31, if:
[[Image here]]
“(2)a. The child is found by the court to be unavailable to testify on any of these grounds:
[[Image here]]
“3. The child’s total failure of memory;
[[Image here]]
“5. The child’s incompetency, including the child’s inability to communicate about the offense because of fear or a similar reason;
[[Image here]]
“b. The child’s out-of-court statement is shown to the reasonable satisfaction of the court to possess particularized guarantees of trustworthiness.”
Section 15-25-33, Ala.Code 1975, provides that “[a] finding of unavailability under Section 15-25-32(2)a.l., 3., 4., 5. and 6. must be supported by expert testimony.” Section 15-25-34, Ala.Code 1975, provides that “[b]efore a statement may be admitted pursuant to this article on the grounds that the child declarant is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act.” Section 15-25-37, Ala.Code 1975, provides:
“In determining whether a statement possesses particularized guarantees of trustworthiness under Section 15-25-32(2)b, the court shall consider any one, but is not limited to, the following factors:
“(1) The child’s personal knowledge of the event;
“(2) The age and maturity of the child;
“(3) Certainty that the statement was made, including the credibility of the person testifying about the statement;
“(4) Any apparent motive the child may have to falsify or distort the event, including bias, corruption, or coercion;
“(5) The timing of the child’s statement;
“(6) Whether more than one person heard the statement;
“(7) Whether the child was suffering from pain or distress when making the statement;
“(8) The nature and duration of any alleged abuse;
“(9) Whether the child’s young age makes it unlikely that the child fabricated a statement that represents a graphic, detailed account beyond the child’s knowledge and experience;
“(10) Whether the statement has a ‘ring of verity,’ has an internal consistency or coherence, and uses terminology appropriate to the child’s age;
“(11) Whether the statement is spontaneous or directly responsive to questions;
*988 “(12) Whether the statement is suggestive due to improperly leading questions;
“(13) Whether extrinsic evidence exists to show the defendant’s opportunity to commit the act complained of in the child’s statement.”
Finally, § 15-25-38, Ala.Code 1975, provides that “[t]he court shall support with findings and record any rulings pertaining to the child’s unavailability and the trustworthiness of the out-of-court statement.”
I.
The appellant contends that the juvenile court erred in admitting evidence of the victim’s out-of-court statements because, he says, (1) the court never made a determination, on the record and supported by specific findings, that the victim was unavailable to testify under § 15-25-32(2)a. as required by § 15-25-38, and (2) if the court did determine that the victim was unavailable, that determination was not supported by expert testimony, as required by § 15-25-33. (Issues I, II, and V in the appellant’s brief.)
The appellant’s claim that the juvenile court never determined that the victim was unavailable to testify is refuted by the record. Although we agree that the juvenile court did not specifically state during the pretrial hearing that it had determined that the victim was unavailable to testify (it merely stated that it was ruling that evidence of the out-of-court statements was admissible), at the conclusion of the State’s case, when the appellant moved for a judgment of acquittal, the court stated that it had found, based on Dr. Faison’s report “that [the victim] is not available to provide testimony from memory due to the conditions described by the psychologist.” (R. 62.) The juvenile court clearly determined that the victim was unavailable to testify, and it specifically put its ruling to that effect on the record. Although the determination was not put on the record when the juvenile court initially ruled during the pretrial hearing that the evidence of the out-of-court statements was admissible, by putting the determination on the record at the conclusion of the State’s case, the juvenile court complied with § 15-25-38. See, e.g., Smith v. State, 745 So.2d 284, 290 (Ala.Crim.App.1998) (holding that the trial court’s putting its findings on the record at the conclusion of the State’s case was sufficient to satisfy § 15-25-38 because that section does not “specifically limit the time within which the court must state the findings”).
Moreover, the court specifically stated that it was basing its determination of unavailability on the “conditions described by the psychologist” in his report, which the court admitted into evidence as a court exhibit. (R. 62.) In his report, Dr. Faison stated that the victim had “limited verbal comprehension and limited cognitive skills”; that she was not “remotely capable of separating fantasy and concrete details”; that “her recall of events is very limited in proximity to the time of the event”; that because of her age, “she cannot recall events in sequence” and “her long-term memory was vague and confused”; and that “[i]n a court testimony situation, it would be impossible for her to provide any concrete information that would be reliable.” (C. 108.) The court’s reference to the psychologist’s findings coupled with the admission of those findings into evidence was sufficient to satisfy the requirement in § 15-25-38 that the court “support with findings ... any rulings pertaining to the child’s unavailability.”
As to the appellant’s alternative claim that the juvenile court’s determination that the victim was unavailable was not supported by expert testimony, the *989 appellant maintains that no expert testimony was offered to support the court’s determination of unavailability before that determination. As noted above, § 15-25-33 provides that a determination of unavailability “must be supported by expert testimony.” “Testimony” is defined as “[e]vidence that a competent witness under oath or affirmation gives at trial or in an affidavit or deposition.” Black’s Law Dictionary, 1485 (7th ed.1999). The juvenile court based its determination of unavailability on the written report submitted by Dr. Faison. That report does not fall within the definition of “testimony” and, therefore, there was a technical violation of § 15-25-33. However, that violation was harmless in light of the fact that Dr. Fai-son presented “testimony” at the adjudication hearing when he testified on the appellant’s behalf. Dr. Faison’s testimony was substantially the same as his report, and both his report and his testimony fully support the juvenile court’s determination that the victim was unavailable to testify because of her failure of memory.[1]
Moreover, we find the appellant’s contention that “expert testimony as to the availability of the alleged victim to testify was expressly barred” by the juvenile court to be meritless. (Appellant’s brief at p. 20.) The record shows that the following occurred at the beginning of direct examination of Dr. Faison:
“[Prosecutor]: We’ll stipulate to Dr. Faison being an expert in the field.
“THE COURT: Dr. Faison has testified in this Court for more than 20 years, thousands of cases. He is accepted as an expert witness in the field of child psychology.
“[Appellant’s counsel]: Thank you, Your Honor.
“[Appellant’s counsel]: Dr. Faison, did you have a — For your information, sir, let me inform you that the Court has introduced, on its own motion, your report into the Court records.
“[Dr. Faison]: Okay.
“[Appellant’s counsel]: In your work for the County, have you had occasion to test [the victim]?
“[Dr. Faison]: I did not test her. I did an interview with her mother and her present.
“[Appellant’s counsel]: With both she and her mother?
“[Dr. Faison]: Yes, I did. But no formal testing procedure.
“[Prosecutor]: Before they begin, I’m going to object to any line of questioning that is going to be appealing Your Honor’s ruling — a prior ruling on a motion that has already been ruled on.
“THE COURT: I still allow examination of the witness, even though the threshold decision was made as to the inability of the alleged victim to testify, being her age and ability to recall. You may proceed, but I will be ready for objections, if they are appropriate.
*990 “[Appellant’s counsel]: We concede, Your Honor, that the out-of-court statements by others have been accepted as admissible and go forward with that.”
(R. 71-72) (emphasis added). The juvenile court did not bar the appellant from questioning Dr. Faison regarding the victim’s unavailability. In fact, following the above-quoted exchange, the appellant’s counsel questioned Dr. Faison with respect to his interview with the victim and her mother (which formed the basis for Dr. Faison’s report), especially regarding certain conclusions that Dr. Faison had reached in his report concerning the victim’s communication skills and the possibility that the victim may have been “coached” into making certain statements. Under these circumstances, any error in the juvenile court determining the victim to be unavailable to testify based on Dr. Faison’s report before Dr. Faison actually “testified” was harmless.
II.
The appellant also contends that the juvenile court erred in admitting evidence of the victim’s out-of-court statements because, he says, there was no “corroborative evidence” of the crimes as required by § 15-25-34. (Issue III in the appellant’s brief.) We disagree.
“Corroborative evidence need not be strong, and need not be sufficient in and of itself to support a conviction; it need not directly connect the accused with the crime, but only tend to do so.” Goodwin v. State, 644 So.2d 1269, 1275 (Ala.Crim.App.1993), quoted with approval in Ex parte Hardley, 766 So.2d 154, 157 (Ala.1999). As the Alabama Supreme Court has noted: “ ‘The probative value of the evidence need only legitimately tend to connect the accused with the crime and need not directly do so.’ ” Ex parte Hunt, 744 So.2d 851, 858 (Ala.1999), quoting Mills v. State, 408 So.2d 187, 191 (Ala.Crim.App.1981). Moreover, circumstantial evidence is sufficient to show corroboration. See Goodwin, 644 So.2d at 1275.
As noted above, the evidence indicated that the victim was left alone with the appellant for approximately 30 minutes. When the victim’s mother returned to check on the victim, who had been asleep on the couch when her mother left, the victim was standing in the bathroom holding her underwear in her hands and crying. A physical examination revealed penetration injuries to the victim’s vagina and anus. We agree with the appellant that Dr. Shriner’s testimony regarding the victim’s injuries was the only evidence offered of her physical condition and, alone, did not tend to connect the appellant to the crimes. However, the evidence of the victim’s injuries coupled with S.B.’s testimony that when she found the victim, after leaving the victim alone with the appellant, she was standing in the bathroom holding her underwear in her hands and crying, was sufficient to connect the appellant to the crimes and thus to corroborate the victim’s out-of-court statements.
III.
The appellant next contends that the juvenile court erred in admitting evidence of the victim’s out-of-court statements because, he says (1) the statements did not possess particularized guarantees of trustworthiness, see §§ 15-25-32(2)b and 15-25-37, and (2) the court did not make a determination, on the record and supported by specific findings, that the statements possessed particularized guarantees of trustworthiness as required by *991 § 15-25-38. (Issues IV and VI in the appellant’s brief.)
We agree that the juvenile court did not “support with findings” nor make a determination on the record that the victim’s out-of-court statements possessed particularized guarantees of trustworthiness. However, we conclude that this technical noncompliance with § 15-25-38 was harmless because, based on our review of the evidence and of the statutory factors regarding the trustworthiness of an out-of-court statement of a child victim, as set out in § 15-25-37, we conclude that the out-of-court statements were sufficiently trustworthy to warrant their admission. Three individuals — including a social worker and a police officer, neither of whom had a motive for falsifying testimony — heard the victim’s statements. See § 15-25-37(3) and (6). The language used by the victim in her statements was appropriate for a two-year-old, and the victim’s two statements were consistent. See § 15-25-37(10). Moreover, the evidence at the adjudication hearing indicated that the appellant had the opportunity to commit the acts referred to in the victim’s statements. See § 15-25-37(13). Therefore, the out-of-court statements had particularized guarantees of trustworthiness as required by § 15-25-32(2)b.
IV.
Finally, the appellant contends that the admission of the victim’s out-of-court statements denied him his constitutional rights to confront the witnesses against him, to due process of law, and to equal protection of the law.
The appellant’s confrontation and due-process arguments are nothing more than a reiteration of his previous arguments that the victim was not unavailable to testify, that the victim’s out-of-court statements were not corroborated, and that the victim’s out-of-court statements did not possess particularized guarantees of trustworthiness. Because we have already determined that the juvenile court properly determined that the victim was unavailable to testify, that the victim’s out-of-court statements were sufficiently corroborated, and that the victim’s out-of-court statements possessed particularized guarantees of trustworthiness, the appellant’s confrontation and due-process arguments are mer-itless. See, e.g., Richerson v. State, 668 So.2d 130, 134-135 (Ala.Crim.App.1995), and Fortner v. State, 582 So.2d 581 (Ala.Crim.App.1990).
As to his equal-protection argument, we find that this argument was not preserved for review because it was never presented to the juvenile court. “Even constitutional claims may be waived on appeal if not specifically presented to the trial court.” Brown v. State, 705 So.2d 871, 875 (Ala.Crim.App.1997).
Based on the foregoing, the judgment of the juvenile court is affirmed.
AFFIRMED.
McMILLAN, P.J., and COBB, BASCHAB, and WISE, JJ., concur.

. Contrary to the appellant's contention, merely because Dr. Faison did not state in his report nor testify at the adjudication hearing to the exact language used in the statute, i.e., he did not specifically state that the victim had a "total failure of memory," does not mean the evidence was not sufficient to support the juvenile court's finding of unavailability. As noted above, Dr. Faison stated in his report that, if the victim were called to testify, "it would be impossible for [the victim] to provide any concrete information that would be reliable" and that the victim's memory was vague and confused. (C. 108.) He also stated in his report, and testified at the adjudication hearing, that the victim's communication skills were poor and that she was unable to identify basic body parts. Dr. Fai-son’s conclusions, both in his report and in his testimony, support the juvenile court’s determination that the victim was unavailable to testify because of her total failure of memory.