COBB, Judge,
dissenting.
For the reasons below, I respectfully dissent from the majority’s decision to affirm the appellant’s adjudication as delinquent and his placement into the custody of the Alabama Department of Youth Services (“DYS”).

Introduction

On September 24, 2002, C.L.Y.[4] was adjudicated delinquent on the underlying charge of first-degree sexual abuse and was placed in custody to await sentencing. On October 9, 2002, the juvenile court committed C.L.Y. to the State treatment program administered by DYS. This appeal followed.
The facts underlying this case indicate that family members gave various accounts of the 3-year-old victim’s spontaneous declarations that 17-year-old C.L.Y. had touched her. The family members’ testimony and the defendant’s testimony were the only evidence presented at trial.
On appeal, C.L.Y. argues that the trial court erroneously found that the child victim was unavailable to testify under § 15-25-32(2)a.5., Ala.Code 1975; that the trial court abused its discretion when it admitted the child’s out-of-court statements because there was no separate determination that the child’s statements possessed particularized guarantees of trustworthiness pursuant to § 15-25-37, Ala.Code 1975; that the trial court abused its discretion when it admitted the child’s out-of-court statements because, he argues, there was no corroborative evidence of the act pursuant to § 15-25-33, Ala.Code 1975; that the trial court did not make specific findings of fact pertaining to the child’s unavailability and the trustworthiness of her out-of-court statements pursuant to § 15-25-38, Ala. Code 1975; and that the verdict was contrary to the weight of the evidence.
I believe that this Court should reverse the judgment in this cause on the basis of the lack of any evidence corroborating the child’s statements and that it, therefore, should not address C.L.Y.’s other arguments regarding the trustworthiness of the child victim’s statements, the unavailability of the child victim, the trial court’s failure to make specific findings regarding the child victim’s unavailability, and the weight of the evidence.

*1058
1. Proceedings Under Review

I completely disagree with the majority’s holding that, in determining the admissibility of a child victim’s out-of-court statement, this Court can look not only at the evidence presented in the pretrial proceedings, but also at the evidence later presented during trial. The majority cites caselaw concerning motions to suppress contraband and a statement to police. See Wilsher v. State, 611 So.2d 1175 (Ala.Crim.App.1992), and Henry v. State, 468 So.2d 896 (Ala.Crim.App.1984). The admission of a child victim’s statement, however, is controlled by statute, not by caselaw, and I believe the majority’s conclusion directly conflicts with the controlling statute.
Ideally, the determination whether a child’s hearsay statement is admissible under the Child Sexual Abuse Victim Protection Act is made during pretrial proceedings. According to statute, the State must file a notice to introduce such statements, and typically the defense files a motion to suppress; an admissibility hearing follows. This is consistent with the workings of the Act:
“The proponent of the statement must inform the adverse party of the opponent’s intention to offer the statement and the content of the statement sufficiently in advance of the proceeding to provide the defendant with a fair opportunity to prepare a response to the statement before thé proceeding at which it is offered.”
§ 15-25-35, Ala. Code 1975.
“Before a statement may be admitted pursuant to this article on the grounds that the child declarant is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act.”
§ 15-25-34, Ala.Code 1975 (emphasis added). The statute is clear as to when the corroborative evidence must be presented' — “[b]efore a statement may be admitted.” Thus, this Court should look only to the evidence presented during the pretrial admissibility hearing to determine whether the State presented sufficient corroborative evidence of the child victim’s out-of-court statements. The statute does not allow this Court to look at the evidence presented by the State during the trial. Additionally, the evidence presented at trial was not considered by the trial court in its pretrial assessment of the statements’ admissibility.
However, the determination of the admissibility of a child’s hearsay statement is a pretrial assessment, unless the trial court reserves its right to rule as the proceedings progress, see K.D.H. v. State, 849 So.2d 983 (Ala.Crim.App.2002),[5] or the *1059 defendant files a motion in limine rather than a motion to suppress, see generally Bacot v. State, 597 So.2d 754 (Ala.Crim.App.1992).
I do not see a viable analogy between our easelaw regarding motions to suppress, see, e.g., Henry v. State, 468 So.2d 896 (Ala.Crim.App.1984), and the admissibility of child-victim statements. The admissibility of child-victim statements is governed by a statute that explicitly states that before a child victim’s statement can be admitted, corroborative evidence must exist.
I believe the majority’s recitation of the evidence that it says is corroborative of the child victim’s out-of-court statements derived from evidence presented during trial, not during the pretrial proceedings, to be incorrect. None of this evidence was before the juvenile court when it determined the child victim’s statements to be admissible, and we should not include such evidence in our assessment of the juvenile court’s pretrial decision to admit the child victim’s out-of-court statements. Additionally, as I explain below, none of this evidence corroborated the act, as required by statute.

II. Corroborative Evidence

“An out-of-court statement made by a child under 12 years of age at the time of the proceeding concerning an act that is a material element of any crime involving child physical offense, sexual offense, and exploitation, as defined in Section 15-25-89, which statement is not otherwise admissible in evidence, is admissible in evidence in criminal proceedings, if the requirements of Section 15-25-32[6] are met.”
§ 15-25-31, Ala.Code 1975.
“Before a statement may be admitted pursuant to this article on the grounds that the child declarant is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act.”
§ 15-25-34, Ala.Code 1975 (emphasis added).
Initially, I completely disagree with the majority’s definition of “corroborative evidence.” I note that the text of the statute is clear; the evidence is to be corroborative “of the act.” Corroborative evidence in the case of a child victim’s out-of-court statements is not the type of corroborative evidence that “ ‘need only legitimately tend to connect the accused with the crime and need not directly do so,’ ” as is necessary in the case of one codefendant’s testimony against another. See Ex parte Hunt, 744 So.2d 851, 858 (Ala.1999) (quoting Mills v. State, 408 So.2d 187, 191 (Ala.Crim.App.1981)). I reiterate, as the text of the statute indicates, that the corroborative evidence is “of the act” and serves to indicate that the act occurred, not that the act was performed by the accused. That is, the evidence corroborates the crime, not the identity of the perpetrator. See Ghelichkhani v. State, 765 So.2d 185, 190 (Fla.Dist.Ct.App.2000) (noting that the phrase “ ‘other corroborative evidence of the abuse or offense’ ” has been defined as “ ‘evidence other . than the alleged child victim’s out-of-court statements which *1060 tends to confirm that the charged offense occurred’ ” (quoting Jones v. State, 728 So.2d 788, 791 (Fla.Dist.Ct.App.1999)).
As stated above in Part I, I would look to the evidence presented during the pretrial admissibility hearing to determine whether the State presented sufficient corroborative evidence of the child victim’s out-of-court statements.
During the pretrial hearing, the following testimony was presented:
1.The victim’s mother testified that, around Mother’s Day 2002, during a family barbecue, the victim was standing in the kitchen and stated that she had been in C.L.Y.’s room playing video games and that he had touched her “pee pee.” (H.R. 17.) She also testified that, in January 2002, five months before that incident, C.L.Y. had been staying with the children while the adults were gone. The victim’s mother testified that, later that night, C.L.Y. woke up crying, came to her parents’ room, and stated that C.L.Y. had “licked her.” (H.R. 18.) The victim’s mother testified that, while in the emergency room being examined, nearly two weeks after the barbecue incident on Mother’s Day weekend, the victim proclaimed to the doctor[7] that she and C.L.Y. were in an abandoned car behind a barn and he “was rubbing lotion on her pee pee” (H.R. 18.); the victim’s mother testified that this was the first she had heard of this alleged barn incident. (H.R. 18.) The mother testified later that C.L.Y. first mentioned the barn incident on Mother’s Day weekend, two weeks before the emergency room visit. (H.R. 20.)
2. The victim’s father testified that, around Mother’s Day 2002, during a family barbecue, the victim and her twin sister were playing on the floor in the kitchen. The victim’s father testified that the victim stated to her sister that C.L.Y. had “touched her pee pee.” (H.R. 29.) He also testified that, one night after C.L.Y. had babysat several children, the victim came into the bedroom where he and his wife were lying down and stated that C.L.Y. had “lick[ed] her pee pee.” (H.R. 29.) He also testified that, while his wife and her sister were painting the bathroom, he overheard the victim telling his wife and her sister that C.L.Y. had rubbed lotion on her legs, her arms, and her “pee pee.” (H.R. 30.)
3. The victim’s grandfather, and C.L.Y.’s adoptive father, testified that, around Mother’s Day 2002, he was in the kitchen while the victim and her sister sat across the counter from him. He testified that he heard the victim state that C.L.Y. had pulled her pants down and touched her on the “pee pee.” (H.R. 37.)
4. The victim’s grandmother, and C.L.Y.’s adoptive mother, testified that, around Mother’s Day 2002, the victim was walking down the hall and stated that C.L.Y. had “pulled her pants down and touched her pee pee.” (H.R. 44.) She also testified that the victim told the emergency room doctor that C.L.Y. had touched her “down there” and “had put lotion on her.” (H.R. 45.)
5. A worker from the Department of Human Resources testified that the victim told her the C.L.Y. had put some lotion on her arms and legs, *1061 not her private parts, before she went swimming and that C.L.Y. had put his hands down her pants. The worker also testified the victim mentioned the barn incident and testified that C.L.Y. had touched her “pee pee” in his bedroom. The worker also testified that, during the interview, the victim’s mother, in describing the January incident, said that the victim had stated that C.L.Y. was going to “get her,” not that he had licked her. The worker also testified that, during the interview, the victim’s father had stated that he had not heard the victim talk about anything that C.L.Y. had done to her. Finally, the worker testified that, during the interview, the victim’s grandmother stated that she was not at home on Mother’s Day when the victim stated in the kitchen that C.L.Y. had touched her “pee pee.”
6. The victim’s uncle testified that on Mother’s Day, during a family barbecue, he and his wife were in the living room while the victim and her sister sat on the love-seat. He testified that he and his wife were the only ones in the room. He further testified that one of the girls — either the victim or her sister — stated that C.L.Y. had touched her “pee pee.” He testified that he later informed the victim’s grandparents and the victim’s mother of this statement.
7. The victim’s aunt testified that on Mother’s Day, during a family barbecue, she and her husband were in the living room when she saw and heard the victim state that C.L.Y. had touched her on her “pee pee.” She testified that she and her husband were the only adults in the area at the time, but that her parents, the victim’s grandparents, also overheard the statement. She also testified that, when she and her sister were painting the bathroom, the victim stated that C.L.Y. had touched her “pee pee” and put lotion on her “pee pee” and legs.
The victim’s mother testified that, when the children played video games in C.L.Y.’s room, the door “had to stay open and we frequently checked on them.” (H.R. 23.) She never testified that the door to C.L.Y.’s room was closed when the children were in his room on Mother’s Day 2002 or at any other point. No other evidence was admitted.
This case is unlike our K.D.H. v. State, 849 So.2d 983 (Ala.Crim.App.2002). In K.D.H., the State presented the following evidence to corroborate the child victim’s out-of-court statements:
“[T]he evidence indicated that the victim was left alone with the appellant for approximately 30 minutes. When the victim’s mother returned to check on the victim, who had been asleep on the couch when her mother left, the victim was standing in the bathroom holding her underwear in her hands and crying. A physical examination revealed penetration injuries to the victim’s vagina and anus.... [T]he evidence of the victim’s injuries coupled with S.B.’s testimony that when she found the victim, after leaving the victim alone with the appellant, she was standing in the bathroom holding her underwear in her hands and crying, was sufficient to ... corroborate the victim’s out-of-court statements.”
K.D.H., 849 So.2d at 990.
In this case, the victim’s mother stated that the victim said that she had been playing video games in C.L.Y.’s bedroom. To some extent, it appears that the mother also testified that, from her personal *1062 knowledge, the victim had just come from C.L.Y.’s room when she made her statement. Her testimony is unclear. However, it is clear that there was no testimony indicating that the victim was alone with C.L.Y. on Mother’s Day 2002, or that the door to the bedroom had been closed when the victim was in C.L.Y.’s room. At most, with any certainty, the evidence during the pretrial hearing indicated only that the victim, as well as other children in the household, had been in C.L.Y.’s bedroom playing video games, not that the victim had been alone with C.L.Y. or that the door to C.L.Y.’s room had been closed when the victim was in the bedroom. This evidence serves to link C.L.Y. to the victim, not to the alleged act; additionally, this evidence does not corroborate that the act occurred, as required by statute.
Additionally, unlike K.D.H., there is no evidence indicating that the victim was upset immediately following the alleged incidents in question. There was no testimony that, during the Mother’s Day barbecue, the victim was upset or frightened of C.L.Y. There was no testimony that she was upset or frightened of C.L.Y. following the alleged lotion incident. The only evidence indicating that the victim was upset was her crying statement uttered in January, five months before the alleged incident at the Mother’s Day barbecue, hours after C.L.Y. had babysat her and the other children. The victim’s parents testified that the statement occurred hours after the alleged instance of sexual abuse, not immediately following the alleged instance of sexual abuse, as in K.D.H. Even if this testimony from the victim’s parents was potentially corroborative, it was hearsay as well. As I discuss in detail below, hearsay testimony should not corroborated by other hearsay testimony.
There was no testimony of the child victim experiencing any behavioral anomaly of any kind following any of the alleged incidents or statements.
Finally, the physical examination of the victim in this case revealed nothing, although certainly this was not particularly unusual in a case that involved only alleged touching. However, I note that there was no testimony regarding the child victim’s demeanor during the examination; rather, the emergency-room doctor did not testify at all during the pretrial proceedings, and the only testimony regarding the emergency-room visit was in the form of hearsay evidence from the victim’s mother and grandmother. Again, as I discuss in detail below, hearsay testimony is not corroborated by other hearsay testimony.
In summary, the only evidence offered to corroborate the alleged act in this case was evidence indicating 1) that the victim had played video games with C.L.Y. on one of the days in question; 2) that C.L.Y. babysat the victim, along with other children, for some unknown amount of time sometime in January 2002; and 3) that the victim was upset that evening in January after C.L.Y. had babysat her. None of this information corroborates the fact that the acts in question occurred. The rest of the evidence against C.L.Y. consisted of the testimony of various family members regarding their versions of the child victim’s out-of-court statements made in their presence. That is, the remainder of the evidence against C.L.Y. consisted of hearsay. Therefore, the hearsay evidence against C.L.Y. was corroborated by only other hearsay evidence, which I would hold to be insufficient as a matter of first impression, as I explain below.

III. Exceptions to Hearsay

I write specially also to address the State’s alternative arguments that, even if the child victim’s statements were not admissible by statute, the child victim’s state *1063 ments were admissible as exceptions to hearsay.
A. The January Statement as an Excited Utterance
The State argues that the January statement is an exception to the exclusionary rule against hearsay and was therefore admissible on its own. The State argues that the child victim’s statement made in January, hours after having spent time with C.L.Y., is admissible as an excited utterance pursuant to Rule 803(2), Ala. R. Evid.[8] Because I believe that the child’s hearsay statements were not admissible as there was no evidence corroborative of the act, I also address why I do not feel that the statements were admissible as exceptions to the rule against the admission of hearsay.
An excited utterance is defined as “[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.” Rule 803(2), Ala. R. Evid.
“Charles Gamble has stated the following regarding Rule 803:
“ ‘This rule sets out three conditions which must be met for admission of the statement. There must be a startling event or condition, the statement must relate to the circumstances of the occurrence and the statement must be made before time has elapsed sufficient for the declarant to fabricate. The statement must be the apparently spontaneous product of that occurrence operating upon the visual, auditory, or other perceptive sense of the speaker. The declaration must be instinctive rather than deliberative. In short, it must be the reflex product of the immediate sensual impressions, unaided by retrospective mental action. Whether a statement qualifies as an excited utterance is a preliminary and discretionary question for the trial court.’
“Charles W. Gamble, McElroy’s Alabama Evidence § 265.01(1) (5th ed.1996) (footnotes omitted). ‘The question of whether the statement is spontaneous in a given case is to be decided upon the facts and circumstances of that case, and such determination is a question for the trial court.’ O’Cain v. State, 586 So.2d 34, 38 (Ala.Crim.App.1991). See also Berryhill v. State, 726 So.2d 297 (Ala.Crim.App.1998).
“ ‘The Alabama Supreme Court, very early on, described the essential element when it observed that admissibility under the present exception
“ ‘ “depends upon whether the circumstances are such as that it may with reasonable certainty be affirmed that the declarations were produced by and instinctive upon the occurrences to which they relate rather than a retrospective narration of them. If they are the ebullition of a state of mind engendered by what happened and not a mere statement of the facts as held in memory of a past transaction — if they were made so soon after the difficulty as that, under the particular circumstances transpiring between the difficulty and the declarations, it is reasonably clear that they sprang out of the transaction.”
“ ‘This decision made it clear that a statement, to be admissible within the present exception, must be made while the declarant is under the stress of excitement caused by the event or condition. The essence of this historic requirement is found in the word *1064 “spontaneous.” The trial court, in determining whether the statement was made spontaneously or during the stress of excitement, ought to consider at least the following: the degree of startlingness of the occurrence; how much time passed after the occurrence but before the statement was made; the effect of intervening events; the nearness of the place where the statement was made to the place of the occurrence; the condition of the declarant; the content of the statement itself; and all other facts relating to whether the declarant was under the stress of a nervous excitement at the time the statement was made.
“ ‘One of the primary factors, in any determination of whether the declar-ant was under the stress of excitement when the statement was made, is the timing of the statement.... The lapse of time between the startling event or condition and the statement is relevant to the issue of spontaneity but not dispositive of it. The better approach to this problem, however, is suggested by those decisions which have held that the question of spontaneity is to be decided upon the facts and circumstances of each individual case and such a determination is a question for the trial judge....
[[Image here]]
“ ‘It should be kept in mind that strict contemporaneity should not be required between the statement and the occurrence in order for the declaration to qualify for the present hearsay exception. Indeed, our courts have said that time alone is not a determining criterion and that applicability of this exception cannot be decided upon the basis of any specified time or number of minutes between the act and the declaration. The critical factor is whether the person who made the statement is still under the influence of the emotions arising from the startling event. Stated differently, the statement does not have to be made contemporaneously with the startling event or condition but it must be uttered contemporaneously with the excitement resulting from the startling event or condition. How long the excitement prevails is largely determined by the character of the event or condition.’
“Gamble, § 265.01(2), quoting Nelson v. State, 130 Ala. 83, 88, 30 So. 728, 730 (1901) (footnotes omitted).”
A.C.M. v. State, 855 So.2d 571, 575-76 (Ala.Crim.App.2002).
In this case, nothing in the record indicates that the victim’s utterance was in response to a startling event or condition, other than testimony that C.L.Y. had babysat her, along with other children, hours earlier in the day. Thus, there is no evidence of the startling event other than the hearsay statement itself. Additionally, even if one could assume that C.L.Y. sexually molested the child victim earlier in the day in question in January 2002, other than the fact that she was crying, there is no evidence that the child victim was still under the stress of excitement caused by the unknown event or condition. The child victim did not manifest her “excitement” until some hours after her parents arrived home and C.L.Y was no longer babysitting her. She was not unconscious, as was the victim in A.C.M.; nothing in the record explains the delay between any alleged incident of sexual molestation and her outburst. I can find no reason to classify the child victim’s crying statement of “He licked me” or “He licked my pee pee,” depending on the version believed, in January as an excited utterance.

*1065
B. The Emergency-Room Statement as Intended for Medical Diagnosis or Treatment

Additionally, the State contends that the child victim’s statements to the emergency-room doctor were admissible under Rule 803(4), Ala. R. Evid., which provides an exception to the general hearsay exclusionary rule. Rule 803(4) provides a hearsay exception in the case of
“[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.”
In Biles v. State, 715 So.2d 878 (Ala.Crim.App.1997), we stated:
“In determining whether a statement comes within this hearsay exception, courts have applied a ‘two-pronged test.’ The first prong ‘is the requirement that the statement must be one upon which medical personnel reasonably rely in diagnosis and treatment. The second prong consists of a requirement that the declarant possess a motive which is consistent with the rule’s underlying purpose ... [of] seeking diagnosis or treatment.’ McElroy’s Alabama Evidence § 261.02(4) (5th ed.1996).”
715 So.2d at 887. The emergency-room doctor did not testify. Nothing in the record indicates that the child victim’s statements at the emergency room were in response to questions from the doctor; that is, there is nothing in the record to indicate that the child victim’s statements were in response to and part of her diagnosis and treatment. The record indicates only that the statements were made after the child’s mother and grandmother had taken her to the hospital, approximately 12 days after the alleged Mother’s Day barbecue incident. This Court has never held that mere evidence that the statements were given while the declarant was in a medical facility are sufficient to qualify as an exception to hearsay. Therefore, because the evidence regarding these emergency room statements establishes only that the statements were uttered while in the hospital, I believe this argument to be without merit.

IV. “Bootstrapping” Hearsay onto Hearsay

The State also argues that the statement from the January incident and the statement in the emergency room, although hearsay, are corroborative of the Mother’s Day barbecue statement, and, therefore, the admission of the child’s statement made at the Mother’s Day barbecue was not error. Because I believe that hearsay evidence cannot be admitted as “bootstrapped” onto other hearsay evidence is a matter of first impression, I write to address this argument.
This Court has never addressed the issue whether hearsay evidence can be corroborated by other hearsay evidence, thereby “bootstrapping” the otherwise inadmissible evidence into evidence. However, in the context of the admissibility of a child victim’s statement, several other jurisdictions have addressed this issue. The majority of them have held that hearsay evidence does not constitute independent, corroborative evidence of the hearsay statements of a child victim so as to render those statements admissible. People v. Bowers, 801 P.2d 511 (Colo.1990); Delacruz v. State, 734 So.2d 1116 (Fla.Dist.Ct.App.1999); In re Flannery, 328 Ill.App.3d 602, 768 N.E.2d 34, 263 Ill.Dec. 274 (2002); State v. Renly, 111 Or.App. 453, 827 P.2d 1345 (1991); and A.P. v. Department of Public Welfare, 696 A.2d 912 (Pa.Commw.Ct.1997). Only two have held otherwise. *1066 State v. Mayes, 251 Mont. 358, 825 P.2d 1196 (1992), and State v. Bishop, 63 Wash.App. 15, 816 P.2d 738 (1991). I find persuasive the policy arguments of those jurisdictions disallowing the corroboration of hearsay evidence with other hearsay evidence, and I disagree with the holdings of the two jurisdictions that allow it.
I tend to agree with the Florida District Court of Appeal:
“In People v. Bowers, 801 P.2d 511 (Colo.1990), the Colorado Supreme Court rejected an argument that the alleged child victim’s use of anatomically correct dolls and her gesturing in describing sexual acts during interviews by a detective and a counselor could be used to corroborate the child’s out-of-court statements of sexual abuse. It said:
“ We are convinced that the term “corroborative evidence” in [Colo.Rev. Stat.] section 13 — 25—129(l)(b)(II) was intended to mean what the term clearly denotes — that is, evidence, direct or circumstantial, that is independent of and supplementary to the child’s hearsay statement and that tends to confirm that the act described in the child’s statement actually occurred. By way of example, and not by limitation, corroborative evidence may include any of the following: testimony from an eyewitness, other than the unavailable child-victim, whose statement is offered into evidence, that the offense occurred; statements of other children who were present when the act was committed against the victim; medical or scientific evidence indicating that the child was sexually assaulted; expert opinion evidence that the child-victim experienced post-traumatic stress consistent with the perpetration of the offense described by the child; evidence of other similar offenses committed by the defendant; the defendant’s confession to the crime; or other independent evidence, including competent and relevant expert opinion testimony, tending to establish the commission of the act described in the child’s statement.
“ ‘The consequences of adopting the alternative construction proposed by the People are obvious. Construing subsection 13 — 25—129(l)(b)(II) so as to permit a child’s verbal or nonverbal assertions made during the course of a statement to be used as corroborative evidence of the act described in the statement would render the child’s statement self-corroborating and would thereby deprive the term “corroborative evidence” of any meaningful content. In effect, the proponent of the child’s statement would be permitted to bootstrap on the assertive content of the statement in order to “corroborate” the act which is the subject of the child’s statement. If the General Assembly had intended such a construction, it would have sanctioned the admissibility of the child’s statement solely on the basis of the trial court’s determination that the “time, content and circumstances of the statement provide sufficient guarantees of reliability,” without regard to the existence of corroborative evidence.
[[Image here]]
“ ‘In light of our determination that the statute does not contemplate the use of the assertive content of the child’s statement, whether in the form of a verbal or nonverbal assertion, as corroborative evidence of the act described in the child’s statement, we also are convinced that subsection 13-25 — 129(l)(b)(II) was not intended to sanction the use of one of the child’s *1067 hearsay statements as corroborative evidence of the act described in another hearsay statement by the same child. Such reciprocal use of hearsay as corroborative evidence would be but another form of evidentiary bootstrapping.’
“Id. at 525-27 (footnote omitted).
“We find more persuasive the Colorado Supreme Court’s treatment of the issue. It seems to us that, had the legislature intended to permit the use of one or more out-of-court statements by the alleged child victim to corroborate either themselves or other out-of-court statements by the child, there would have been no need to include any requirement regarding corroboration, and certainly no reason to require ‘other corroborative evidence.’ (Emphasis added.) Had such been its intent, the legislature would have omitted any requirement regarding corroboration, providing instead that only reliability need be established in order for such statements to be admissible. Moreover, to read [Fla. Stat. Ann.] section 90.803(23)(a)2b as the state urges would permit those charged with crimes against children to be convicted based solely upon hearsay evidence. Accordingly, we hold that out-of-court statements of the alleged child victim may not be used to satisfy the ‘other corroborative evidence’ requirement of section 90.803(23)(a)2b.”
734 So.2d 1116, 1120-22 (emphasis omitted; emphasis added). Although our statute requires “corroborative evidence of the act,” rather than “other corroborative evidence,” I nonetheless agree with the reasoning of the Florida District Court of Appeal.
With regard to Mayes, it is important to note that Montana does not have a child-hearsay statutory scheme like Alabama’s and those other jurisdictions that do not allow “bootstrapping.” Therefore, in Mayes, the Montana Supreme Court applied its rules of evidence and questioned whether hearsay evidence of children’s statements had “ ‘comparable circumstantial guarantees of trustworthiness.’ ” 251 Mont. at 364, 825 P.2d at 1200 (quoting Rule 804(b)(5), Mont. R. Evid.). The requirement of corroborative evidence was established by caselaw, which held that “ ‘the presence of corroborating evidence more appropriately indicates that any error in admitting the statement might be harmless, rather than that any basis exists for presuming the declarant to be trustworthy.’ ” 251 Mont. at 371, 825 P.2d 1204 (quoting Idaho v. Wright, 497 U.S. 805, 823, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990)). Thus, in Montana, whether corroborative evidence exists bears upon only the trustworthiness of the statements in question and is not a prerequisite for admissibility.
In Alabama, however, our statutory scheme indicates that the trustworthiness inquiry is wholly separate from the requirement that there exist evidence corroborative of the child’s hearsay statements before those statements may be admitted into evidence. In addition, our caselaw indicates the same:
“Under Alabama’s statute, a determination that a child’s out-of-court statements will be admitted because the child is unavailable under § 15-25-32(2)(a) includes a separate determination under § 15-25-37 that the child’s ‘statement possesses particularized guarantees of trustworthiness.’ The separate finding that the statement is ‘trustworthy’ under § 15-25-37 is in addition to the requirement found in § 15-25-34 providing that the child’s statement be admitted only when ‘there is corroborative evidence of the act.’ ”
*1068 Richerson v. State, 668 So.2d 130, 135 (Ala.Crim.App.1995) (emphasis added). Because we apply a separate corroborative analysis and do not dismiss the lack of corroborative evidence as a harmless error compensated for by alternative evidence of trustworthiness, I do not find the reasoning of the Montana Supreme Court to be persuasive and would adopt instead the majority view that a child victim’s hearsay statements cannot be corroborated by his or her other hearsay statements. See Bowers, 801 P.2d at 527 (“Such reciprocal use of hearsay as corroborative evidence would be but another form of evidentiary bootstrapping.”).
As part and parcel of this argument, the State contends that, because the two statements are exceptions to the rule against hearsay, they can be used to corroborate the Mother’s Day barbecue statement even if we choose to not allow hearsay to corroborate hearsay. Although I would have held that the two statements were not admissible as exceptions to hearsay, I nonetheless address this argument and would hold that, for the reasons below, even if I had thought those two statements had been admissible as exceptions to the hearsay rule, I would not allow them to corroborate the child victim’s Mother’s Day barbecue statement.
In State v. Bishop, 63 Wash.App. 15, 816 P.2d 738 (1991), the Washington Court of Appeals held that the child victim’s statement to her treating physician while he was examining her that she was experiencing painful urination was admissible because, although the statement was hearsay, it was admissible under an exception to the hearsay exclusionary rule that allows the admission of statement made for purposes of medical diagnosis or treatment. See Rule 803(a)(4), Wash. R. Evid. Because the statement was otherwise admissible, there was no need for corroborative evidence. The Court then went on to hold that the painful-urination statement, as a hearsay exception, could be used to corroborate the child victim’s other statements. The Court held:
“The essential purpose of the child hearsay statute is to alleviate ‘the difficult problems of proof that often frustrate prosecutions for child sexual abuse.’ [State v. Jones], 112 Wash.2d [488] at 493-94, 772 P.2d 496 [(1989)]. This purpose ‘should not be defeated by a stubborn insistence on corroboration that is impossible to obtain.’ Jones, 112 Wash.2d at 496, 772 P.2d 496. There is no direct physical or testimonial evidence of alleged acts in most cases of child sexual abuse, and indirect evidence of abuse may satisfy the corroboration requirement.”
63 Wash.App. at 26, 816 P.2d at 745.
Therefore, even if I believed that any of the child victim’s statements in this case were admissible as an exception to the evidentiary rule excluding hearsay evidence, I would not find them sufficient to corroborate the child’s statement during the Mother’s Day barbecue.

Conclusion

I believe that the trial court abused its discretion by allowing the admission of the child victim’s hearsay statements because the State failed to provide sufficient corroborative evidence of the child’s hearsay statements, as required by statute. Additionally, I believe that the child’s statements were hearsay and that they did not fall under any exception to the rule excluding hearsay testimony. Finally, I believe the child’s hearsay statements could not serve to corroborate each other.
For the reasons stated above, I would reverse the judgment of the juvenile court and remand this cause for proceedings consistent with this dissenting opinion, and the State would not be permitted to prem *1069 ise any second prosecution on the same evidence I would have held inadmissible. See Ex parte Lindley, 728 So.2d 1153 (Ala.1998).

. C.L.Y., who was 17 years old at the time the delinquency petition was filed, was a foster child from Illinois who was adopted when he was 15 years old by the Alabama family involved in this case.

. I note that this case differs from our recent case of K.D.H. v. State, 849 So.2d 983 (Ala.Crim.App.2002). In K.D.H., this Court considered corroborative evidence that was presented by the State in its case-in-chief, rather than during the brief pretrial hearing. However, the case of K.D.H. presented a procedural anomaly:
"The juvenile court held a brief hearing on the motions [concerning the child victim’s statements]. At the hearing, the State argued that the statutory requirements for allowing such statements into evidence were met in this case as evidenced by a report submitted by Dr. Lariy Faison, a child psychologist who had evaluated the victim; the appellant argued that the requirements had not been met. The juvenile court ruled that the statements were admissible. However, after that ruling, the appellant presented several more arguments to the trial court as to why the statements should not be admitted into evidence. After hearing these arguments, the juvenile court stated: Tm going to have to rule as you come forward with each of the witnesses.' (R. 6.)”
849 So.2d at 986. The State then presented its case-in-chief. Thus the juvenile court reserved its ruling on the admissibility of the *1059 statements until the trial itself. The defendant did not object to that procedure.
In the case at hand, the juvenile court made no such reservation. Therefore, I would consider only the evidence that was before the juvenile court when it made its determination regarding the admissibility of the child victim's statements — the evidence presented during the pretrial hearing.

. As stated above, I would not address the trustworthiness of the statement, see § 15-25-32(2)b., Ala.Code 1975, as I would reverse this cause based on the dearth of corroborative evidence of the act alleged in this case.

. The emergency-room doctor did not testify during the pretrial hearing or at trial.

. The State never presented this argument to the trial court.